IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANE DOE (K.B.),

  Plaintiff,

  v.

G6 HOSPITALITY, LLC, et al.,

  Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-2597-TWT

## OPINION AND ORDER

The Plaintiff K.B. brings this case under the Trafficking Victims Protection Reauthorization Act ("TVPRA"). It is before the Court on the Defendant Hare Krishna Savannah Hotel, LLC ("Hare Krishna")'s Motion to Dismiss [Doc. 17], the G6 Defendants'[1] Motion to Dismiss [Doc. 27], the Defendant Hare Krishna's Motion to Join and Adopt Select Arguments from the G6 Defendants' Motion to Dismiss [Doc. 29], and the Defendant Hare Krishna's Motion for the Private Disclosure of Plaintiff's Identity [Doc. 35]. For the reasons set forth below, the Defendant Hare Krishna's Motion to Dismiss [Doc. 17] is GRANTED in part and DENIED in part, the G6 Defendants' Motion to Dismiss [Doc. 27] is GRANTED, the Defendant Hare Krishna's

---

[1] The G6 Defendants include G6 Hospitality, LLC; G6 Hospitality Franchising, LLC; G6 Hospitality IP, LLC; G6 Hospitality Purchasing, LLC; and Motel 6 Operating, LP. They operate a franchising system of hotels that includes the Savannah Motel 6, which is where the alleged violation of the TVPRA occurred in this case. (Compl. ¶ 59).

Motion to Adopt Select Arguments from the G6 Defendants' Motion to Dismiss [Doc. 29] is GRANTED, and the Defendant Hare Krishna's Motion for the Private Disclosure of Plaintiff's Identity [Doc. 35] is DENIED as to the specific relief requested.

## I.    Background[2]

This action arises from allegations that the Plaintiff K.B. was a victim of sex trafficking at a Motel 6 in Savannah, Georgia—a franchise owned by the Defendant Hare Krishna and allegedly jointly operated and managed by the G6 Defendants. (Compl. ¶¶ 53, 58-59). K.B. asserts that a man named Jason King forced her into being trafficked and engaging in sex for profit. (*Id.* ¶ 52). Between August 2016 and December 2016, K.B. alleges she was trafficked at the Motel 6 Savannah, which "was notorious for prostitution and drug distribution and use." (*Id.* ¶¶ 53, 55). On June 9, 2023, K.B. filed the present action, asserting a civil beneficiary claim under the TVPRA and O.C.G.A. § 51-1-56 against Hare Krishna and the G6 Defendants. The Defendants now move to dismiss the Plaintiff's claims against them. Hare Krishna also moves for disclosure of K.B.'s identity.

---

[2] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Amwi. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555)

3

### III.   Discussion

In support of its Motion to Dismiss, Hare Krishna asserts that venue is improper in this Court, that the TVPRA is void for vagueness as applied to Hare Krishna, and that O.C.G.A. § 51-1-56 was not effective at the time of the alleged violation and should not be retroactively applied. (*See* Hare Krishna's Br. in Supp. of Mot. to Dismiss). The G6 Defendants have filed a separate Motion to Dismiss in which they argue: (1) K.B. has not alleged sufficient facts to support her claims against them based on their actions; (2) K.B. has not alleged sufficient facts to support an agency theory that would hold them vicariously liable for Hare Krishna's actions; (3) K.B. has not alleged sufficient facts to support her claims against Hare Krishna, even assuming her agency theory succeeds; and (4) O.C.G.A. § 51-1-56 should not be retroactively applied. (*See* G6 Defs.' Br. in Supp. of Mot. to Dismiss). Hare Krishna has adopted the G6 Defendants' argument that K.B. has not alleged sufficient facts to support her claims against Hare Krishna.[3] Hare Krishna has also made a Motion for the Private Disclosure of Plaintiff's Identity [Doc. 35]. The Court considers each of these arguments below.

---

[3] Hare Krishna made a Motion for Joinder and Adoption of Select Arguments from the G6 Defendants' Motion to Dismiss [Doc. 29], which the Court grants.

## A. Venue

The Defendant Hare Krishna moves to dismiss the case for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative to transfer the case to the Southern District of Georgia under 28 U.S.C. § 1406. (Def. Hare Krishna's Br. in Supp. of Mot. to Dismiss, at 3-7). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). The three categories of judicial districts in which venue is proper under § 1391(b) are:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "When a defendant raises an objection to venue, the plaintiff bears the burden of demonstrating the chosen venue is proper." *Avent v. Pirrello*, 2017 WL 1062372, at *2 (N.D. Ga. Mar. 20, 2017) (citation omitted).

5

K.B. argues that venue is proper both because of the residency of the Defendants and because a substantial part of the events or omissions took place in the Northern District of Georgia. (Pl.'s Br. in Opp'n to Hare Krishna's Mot. to Dismiss, at 5-11). Starting with the residency category, Hare Krishna acknowledges that it resides in the Northern District of Georgia. (Def. Hare Krishna's Br. in Supp. of Mot. to Dismiss, at 4). The dispute is whether the G6 Defendants are residents of Georgia.[4] Hare Krishna says they are not; K.B. says they are. (*Id.*; Pl.'s Br. in Opp'n to Hare Krishna's Mot. to Dismiss, at 6-9). The Court finds that the G6 Defendants are Georgia residents for the purposes of this case and that venue is therefore proper.

-------

[4] Hare Krishna also takes issue with the fact that K.B. argues in her Response that venue is proper based on residency, even though her Complaint only stated that venue is proper based on a substantial part of the events or omissions taking place in this District. (Reply Br. in Supp. of Hare Krishna's Mot. to Dismiss, at 1-2). However, Rule 8 has "no requirement that venue be pled." *Cooper Lighting, LLC, v. Cordelia Lighting, Inc.*, 2017 WL 11629195, at *6 (N.D. Ga. Nov. 13, 2017); *see also Elite Flower Servs., Inc. v. Elite Floral & Produce, LLC*, 2013 WL 12095134, at *5 (S.D. Fla. June 18, 2013) ("[A] plaintiff is not required to include *any* venue allegations to avoid a dismissal under Rule 12(b)(3), much less to plead venue with the specificity that Defendant suggests." (citations omitted)). Furthermore, "Rule 12(b)(3) is a somewhat unique context of dismissal in which we consciously look beyond the mere allegations of a complaint, and, although we continue to favor the plaintiff's facts in the context of any actual evidentiary dispute, we do not view the allegations of the complaint as the exclusive basis for decision." *Est. of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012) *superseded by statute on other grounds as stated in Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1364 n. 2 (11th Cir. 2018).

Since the G6 Defendants consist of limited liability companies and a limited partnership, their residency determinations fall under § 1391(c)(2). That provision states in relevant part that "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Since Hare Krishna filed its 12(b)(3) motion, the G6 Defendants have filed their own 12(b) motion to dismiss and did not challenge this Court's personal jurisdiction over them. (*See* G6 Defs.' Br. in Supp. of Mot. to Dismiss). Federal Rule of Civil Procedure 12(h) deems any dispute over personal jurisdiction to be waived if a party fails to object in its first Rule 12 motion, other responsive pleading, or general appearance. *Oldfield v. Pueblo De Habia Lora, S.A.*, 558 F.3d 1210, 1218 n. 21 (11th Cir. 2009). As such, the G6 Defendants have waived any objection to personal jurisdiction in this case.

As many courts have held, an out-of-state entity "which consents to a court's personal jurisdiction by waiver is 'subject to' that court's personal jurisdiction for purposes of § 1391(c)(2)." *Augusta Nat'l, Inc. v. Green Jacket Auctions, Inc.*, 2018 WL 797434, at *3 (S.D. Ga. Feb. 8, 2018) (compiling cases). Since all of the Defendants have consented to personal jurisdiction by waiver, the Court finds that each of the Defendants resides in Georgia for venue

7

purposes and that venue is proper. *See Dakota Provisions, LLC v. Hillshire Brands Co.*, 226 F. Supp. 3d 945, 960 (D. S.D. 2016) ("[B]ecause the defendants have consented to personal jurisdiction in South Dakota, they have also consented to venue in South Dakota as they are 'subject to the court's personal jurisdiction with respect to the civil action in question[.]' Thus, each of the defendants 'reside' in South Dakota and are properly subject to venue in South Dakota under 28 U.S.C. §1391(c)(2)." (footnote and citation omitted)); *Brenneman v. Great Wolf Lodge of Kansas City, LLC*, 2015 WL 6082105, *1-2 (W.D. Mo. Oct. 15, 2015) (finding venue is proper because all defendants waived personal jurisdiction and therefore "reside" in Missouri under 28 U.S.C. §1391(b)(1)).

## B. Franchisor's Direct Liability

K.B. raises a beneficiary claim against the G6 Defendants related to her trafficking pursuant to 18 U.S.C. § 1595. (Compl. ¶¶ 114-21). To state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant:

> (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). The G6 Defendants argue that K.B. has failed to establish the second or fourth

elements of her claim. (G6 Defs.' Br. in Supp. of Mot. to Dismiss, at 8-9).

Regarding the second element, §1595 requires a plaintiff to show that the defendants "participat[ed] in a venture" that violates the TVPRA to succeed on a beneficiary claim. 18 U.S.C. § 1595(a). The Eleventh Circuit has interpreted the phrase "participation in a venture" to require a plaintiff to allege that the defendants "took part in a common undertaking or enterprise involving risk and potential profit." *Red Roof*, 21 F.4th at 725. To do so successfully, a plaintiff must "connect the dots between the plaintiff's particular experience as a victim of trafficking and the specific defendant in the case." *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1235 (N.D. Ga. 2022) (quotation marks and citations omitted). A plaintiff may do so by (1) alleging a "direct association" between the beneficiary and the plaintiff's trafficker or (2) alleging a "continuous business relationship" between a defendant hotel and a sex trafficker. *Id.*

In *Red Roof*, the Eleventh Circuit held that the plaintiffs failed to plausibly allege that three hotel franchisors "participated in a venture" and therefore failed to state a claim under the TVPRA. *Red Roof*, 21 F.4th at 726. The court reasoned that although the plaintiffs' allegations "suggest[ed] that the franchisors financially benefitted from renting hotel rooms to the [plaintiffs'] sex traffickers . . . they [did] nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the

TVPRA." *Id.* at 726-27. The court also found insufficient to state a claim the plaintiffs' allegations that the franchisors "investigated the individual hotels, took remedial action when revenue was down, read online reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating sex trafficking at the hotels." *Id.* at 727. The court noted that "observing something is not the same as participating in it." *Id.*

By contrast, the First Circuit in *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), held that the plaintiff stated a plausible TVPRA claim against the hotel operator-defendant where she "plausibly alleged that the operators' association with the plaintiff's sex trafficker was a 'venture' because her abuser 'had prior commercial dealings with the [operators], which the parties wished to reinstate for profit.'" *Red Roof*, 21 F.4th at 725 (alteration in original) (quoting *Ricchio*, 853 F.3d at 555). The court in *Ricchio* summarized the plaintiff's allegations that plausibly pleaded a venture between the trafficker, McLean, and the hotel operators, the Patels, as follows:

> McLean enticed Ricchio to drive from Maine to the [motel] in Massachusetts, where he took her captive and held her against her will. Over the course of several days there, McLean physically and sexually abused Ricchio, repeatedly raping her, starving and drugging her, and leaving her visibly haggard and bruised. He told her that he was grooming her for service as a prostitute subject to his control. McLean had prior commercial dealings with the Patels, which the parties wished to reinstate for profit. McLean and Mr. Patel enthusiastically expressed this intent by exchanging high-fives in the motel's parking lot while speaking about "getting this thing going again," in circumstances in

10

which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels. Ms. Patel had not only nonchalantly ignored Ricchio's plea for help in escaping from McLean's custody at the motel but, when visiting the rented quarters to demand further payment, had shown indifference to Ricchio's obvious physical deterioration. And in plain daylight view of the front office of the motel, either of the Patels on duty there would have seen McLean grab Ricchio, kick her, and force her back toward the rented quarters when she had tried to escape.

*Ricchio*, 853 F.3d at 555.

Given this background, the Plaintiff presents two theories of venture that it argues is sufficient to support its direct claims against the G6 Defendants: (1) G6 participated in a venture with K.B.'s traffickers which violated the TVPRA, and (2) G6 participated in a venture with Hare Krishna by operating the hotel, and that venture violated the TVPRA. (Pl.'s Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 11-12). The Court finds that neither of these theories succeed in stating a claim against the G6 Defendants.

### i. Venture with Traffickers

K.B. argues that the G6 Defendants participated in a venture with her trafficker by "renting rooms through control of the centralized reservation system franchisees are required to use; dictating payment methods accepted, including the acceptance of cash; setting identification requirements; and controlling revenue management systems." (*Id.*, at 12). Furthermore, K.B. contends that the G6 Defendants "retained control over and was directly involved in aspects of operations related to sex trafficking, including security

11

policies, staff training, and policies for detecting and responding to trafficking."
(*Id.*). This is insufficient to allege that the G6 Defendants participated in a
venture in violation of TVPRA.

With respect to the alleged control the G6 Defendants have over
reservations, payment methods, identification requirements, and revenue
management systems, *Red Roofs* is instructive. There, the plaintiffs alleged
that the franchisors "owned, managed, supervised, operated, oversaw,
controlled the operation of, and/or were inextricably connected to the renting
of rooms. *Red Roofs*, 21 F.4th at 726. Furthermore, they alleged that the
franchisors received royalties based on gross room revenue, investigated
individual hotels, and read online reviews mentioning prostitution and crime
occurring at the hotels. *Id.* at 726-27. However, the court found that "[n]one of
these allegations suggest that the franchisors participated in an alleged
common undertaking or enterprise with the Does' sex traffickers or others at
the hotel who violated the statute." *Id.* at 727. The Court cannot discern how
K.B.'s allegations are any more severe or plausible than the allegations of the
plaintiffs in *Red Roof*.

It is similarly difficult to distinguish K.B.'s allegations related to G6
Defendants' alleged control over security policies, staff training, and policies
for detecting and responding to trafficking. In *Red Roof*, the plaintiffs alleged
that the franchisors controlled the training of managers and employees at

hotels that allegedly facilitated sex trafficking. *Id.* Yet, the Eleventh Circuit found "[a]gain, these allegations are insufficient to state a claim." *Id.* K.B. provides four cases to support its claim that her allegations are sufficient to state a claim. (Pl.'s Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 12 n. 7). However, only one of those cases were ruled on after *Red Roof* was decided and none of them were in the Eleventh Circuit. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020); *J.M. v. Choice Hotels Int'l, Inc.*, 2023 WL 3456619 (E.D. Cal. May 15, 2023); *A.B. v. Marriot Int'l, Inc.*, 455 F. Supp. 3d 171 (E.D. Pa. 2020).

The Court finds more persuasive *A.D. v. Choice Hotels Int'l, Inc.*, 2023 WL 3004547 (M.D. Fla. Apr. 19, 2023). The court in *A.D.* dismissed a claim alleging that a hotel franchisor took insufficient steps to stop sex trafficking in its hotels:

> The "participation" in the sex trafficking venture is essentially that the alleged franchisor and the hotel operator did not fight hard enough to keep these traffickers from using the hotel. The Complaint acknowledges that Defendants opposed sex traffickers, but fault Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture. This is particularly true of a franchisor like Choice, which has no direct contact with its alleged venture partners.

*Id.* at *4. Likewise, K.B. alleges that that the G6 Defendants' ineffective enforcement of its anti-trafficking policies facilitated the trafficking, and she fails to allege any direct contact between the G6 Defendants and her trafficker.

13

(Compl. ¶¶ 62, 68, 95, 107). The Court therefore finds that K.B.'s Complaint does not sufficiently allege that the G6 Defendants participated in a venture with K.B.'s trafficker.

### ii.   Venture with Franchisee

K.B. also argues that the G6 Defendants can be held liable for their participation in a commercial venture with Hare Krishna that involved harboring sex trafficking victims. (Pl.'s Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 13). K.B. asserts that this theory of venture was "recognized" as a basis for liability by the Eleventh Circuit in *Red Roof*. (*Id.*). This is not quite accurate. In *Red Roof*, the court declined to consider the theory at all because it was not supported by the complaint and was raised for the first time on appeal. *Red Roof*, 21 F.4th at 727. That being said, the Seventh Circuit has considered this venture theory and provided a well-reasoned explanation for concluding that § 1595(a) does not require the "venture" to be a sex-trafficking venture. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 553-54 (7th Cir. 2023). Even if a commercial venture between a hotel franchisor and franchisee can establish beneficiary liability under the TVPRA, K.B. has failed to sufficiently allege that the G6 Defendants had knowledge of the trafficking to state a claim against them.

The parties dispute the level of specificity with which knowledge must be asserted for a beneficiary claim. The G6 Defendants argue that a plaintiff

14

must allege knowledge of the specific trafficking victim; K.B. contends that general knowledge of trafficking is sufficient. (G6 Defs.' Br. in Supp. of Mot. to Dismiss, at 14; Pl.'s Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 16-18). The parties point to many different cases in support of their respective positions, but one case is dispositive. In *Red Roof*, the Eleventh Circuit defined the knowledge element as requiring the plaintiff to allege that "the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff.*" *Red Roof*, 21 F.4th at 726 (emphasis added). By including the phrase "as to the plaintiff" in that element, the Eleventh Circuit decided that a complaint must allege plaintiff-specific knowledge of the trafficking rather than mere general knowledge that trafficking is occurring. That decision is binding on this Court, and thus, K.B.'s claim against the G6 Defendants can only proceed if she sufficiently alleged facts showing that the G6 Defendants had actual or constructive knowledge of K.B.'s trafficking.

K.B. contends that *Red Roof* does not require the Court to reach this result. (Pl.'s Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 17 n. 10). First, she claims that the discussion of the knowledge element is mere dicta that is not binding on this Court. (*Id.*). Even though the focus of the opinion was on whether the franchisors "participated" in the trafficking, the court specifically found that the knowledge allegations were insufficient. *Red Roof*, 21 F.4th at 727 (holding the plaintiffs' complaint was insufficient when "[t]heir only

allegations *as to the franchisors' knowledge* or participation in those sex trafficking ventures are that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels." (emphasis added)). Second, K.B. claims that "[b]ecause the venture K.B. alleges is much broader than the venture that the plaintiffs alleged in *Doe*, the proper scope of the *mens rea* analysis is broader too." (Pl.'s Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 17 n. 10). K.B. provides no authority for this claim, nor does she provide any explanation for why the legal test for the same cause of action would change depending on the facts alleged by the plaintiff. Accordingly, the Court finds *Red Roof*'s plaintiff-specific knowledge requirement binding on this case and turns to whether K.B. has satisfied that requirement.

Many of K.B.'s allegations were explicitly found in *Red Roof* to be insufficient to show plaintiff-specific knowledge. The Eleventh Circuit found that allegations "that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels" were insufficient when they were the "only allegations as to the franchisors' knowledge." *Red Roof*, 21 F.4th at 727. Thus, K.B.'s allegations that the G6 Defendants were aware of online reviews discussing trafficking and/or prostitution at the Savannah Motel 6, that regular inspections were done by the G6 Defendants, and that illegal activity

16

was done in plain view do not plausibly allege the knowledge requirement. (Pl.'s Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 16-19). Others of her allegations are clearly too general to infer knowledge of K.B.'s trafficking, such as the ones alleging the G6 Defendants' knowledge of trafficking in the hotel industry at large.

This leaves one last allegation: that the G6 Defendants have a policy that required franchisees to "report suspicions of criminal activity." (Compl. ¶ 62). K.B.—citing to *J.M.*, 2023 WL 3456619, at *4—asserts that such a policy is sufficient to infer constructive knowledge. (Pl.'s Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 20). However, *J.M.* relies on *J.C.*, 2020 WL 6318707, which is factually distinguishable from this case. There, the plaintiff alleged that employees at the hotel knew of the plaintiff's trafficking and "reported such activity directly to [defendants], including illegal website use, booking and reservation history; payment by cash for several rooms at a time and visits from multiple men throughout the day." *Id.* at *6 (alteration in original) (quotation marks omitted). Here, there is no allegation that Hare Krishna actually followed the policy by reporting K.B.'s trafficking. Furthermore, even if Hare Krishna did follow the policy, the Court cannot infer that the G6 Defendants knew about K.B.'s trafficking because the alleged policy does not specify whether the franchisee is supposed to report their suspicions of criminal activity to the franchisor or to law enforcement. Altogether, the Court

17

finds these allegations do not plausibly allege that the G6 Defendants had constructive knowledge of K.B.'s trafficking. Since none of the allegations in the Complaint provide a plausible basis for finding that the G6 Defendants knew or should have known about K.B.'s trafficking, the Court holds that the G6 Defendants cannot be found directly liable for its venture with Hare Krishna under the TVPRA.

## C. Franchisor's Vicarious Liability

K.B. also raises an agency theory against the G6 Defendants in an attempt to hold them vicariously liable for the actions of Hare Krishna. (Compl. ¶ 120). The G6 Defendants assert that K.B. has not alleged sufficient facts to establish an agency relationship between the G6 Defendants and Hare Krishna. (G6 Defs.' Br. in Supp. of Mot. to Dismiss, at 20). The Court agrees that K.B. has not adequately alleged an agency relationship in this case.

"A franchisor does not become liable for the acts of its franchisee merely because of the franchisor/franchisee relationship." *Summit Auto. Grp., LLC v. Clark*, 298 Ga. App. 875, 882 (2009). To establish actual agency pursuant to a franchise agreement under Georgia law,[5] a plaintiff must plausibly allege that

---

[5] K.B. asserts that federal common law should apply instead of Georgia law. (Pl.'s Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 23). However, many courts apply state law when determining vicarious liability in TVPRA claims. *See, e.g.*, *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697, 707-08 (E.D. Mich. 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959,

the franchisor controlled the time, manner, and method of the franchisee's day-to-day operations. *New Star Realty, Inc. v. Jungang PRI USA, LLC*, 346 Ga. App. 548, 554–55 (2018).

> In applying this test, [Georgia courts] must be mindful of the special relationship created by a franchise agreement, for a franchisor is faced with the problem of exercising sufficient control over a franchisee to protect the franchisor's national identity and professional reputation, while at the same time foregoing such a degree of control that would make it vicariously liable for the acts of the franchisee and its employees. Given this special relationship, we have held that a franchisor may protect its franchise and its trade name by setting standards governing its franchisee's operations, and these standards may be quite detailed, specific, and strict. Moreover, the fact that a franchise agreement authorizes periodic inspections of the franchise and gives the franchisor the right to terminate the agreement for noncompliance is not enough to prove an agency relationship.

*Id.* at 555 (citation omitted).

Even reading the allegations in the light most favorable to K.B., her Complaint does not plausibly allege that the G6 Defendants exercised

---

971-72 (S.D. Ohio 2019). Moreover, even courts that look to the Restatement (Third) of Agency—which K.B. states should apply—find that a mere franchisor-franchisee relationship does not create an agency relationship. *See A.B. v. Hilton Worldwide Holdings*, 484 F. Supp. 3d 921, 939-40 (D. Or. 2020); *Nebraskaland, Inc. v. Sunoco, Inc. (R & M)*, 2013 WL 5656143, at *5 (E.D.N.Y. Oct. 11, 2013) ("The general rule holds that a franchisee is not the agent of a franchisor. That rule makes sense because the typical franchise agreement disclaims any agency relationship, instead establishing the franchise as an independent business, operating at the franchisee's direction and for its own benefit." (citation omitted)). For the reasons stated below, the Court finds that K.B. has failed to allege anything more than a franchisor-franchisee relationship. Accordingly, the result would not differ under federal common law.

sufficient control over Hare Krishna to state a vicarious liability claim against them. Many of the allegations are conclusory, which need not be credited by the Court. *Iqbal*, 556 U.S. at 681. These include allegations that (1) the G6 Defendants and Hare Krishna "jointly employ the employees of the Motel 6 Savannah because they jointly exercise a high degree of control over the terms and conditions of their employment;" (2) the G6 Defendants "required Franchisee to adhere to consistent standard regarding the day-to-day operations of the Motel 6 Savannah and exercised control over the means, methods, and tools used by Franchisee;" (3) Hare Krishna "was an actual agent of G6 Hospitality with respect to the operation of the Motel 6 Savannah;" and (4) the G6 Defendants "retained control over the details and methods of aspects of the operation of the Motel 6 Savannah that are directly relevant to the proliferation of sex trafficking at that property." (Compl. ¶¶ 61, 101, 105-06). These are nothing more than restatements of the standard needed and naked conclusions, so the Court will not credit them.

The Complaint goes into more detail in other paragraphs. One of those paragraphs describes thirteen ways in which the G6 Defendants exercised control over Hare Krishna, but that paragraph is undermined by stating that the G6 Defendants exercise control "through at least one or more of the following actions." (Compl. ¶ 104). Such a phrasing "strips these allegations of any force" by failing to state which one of those thirteen forms of control the

G6 Defendants used. *H.G.*, 489 F. Supp. 3d at 708; *see also L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1362 (S.D. Fla. 2022); *B.J. v. G6 Hospitality, LLC*, 2023 WL 3569979, at *8 (N.D. Cal. May 19, 2023). Those allegations therefore do not plausibly establish control by the G6 Defendants.

All of the other allegations show involvement by the G6 Defendants only insofar as to promote uniformity and standardization of the brand. Importantly, none of the facts alleged appear to exceed that of a typical franchise agreement arrangement—for example supplying instruments such as a central online reservation system and revenue management tools, determining acceptance of cash and pre-paid credit cards, requiring job training, conducting annual inspections, and providing loyalty programs, a phone number, and a website. (Compl. ¶¶ 62, 99-100, 102-03, 107). However, allegations "tending to show that the franchisors' involvement was limited to uniformity and standardization of the brand have been found to be insufficient to establish complete control over the day-to-day operations of the franchisee's business." *H.G.*, 489 F. Supp. 3d at 708–09 (quotation marks and citation omitted). Accordingly, K.B.'s "allegations, even if proven true, would fail to sufficiently demonstrate that the franchisor defendants exercised such complete control over the day-to-day operations of the franchisee's business that its purported independence may be fairly dismissed as a fiction." *S.J.,* 473 F. Supp. 3d at 156 (quotation marks and citation omitted). Therefore, K.B.'s

vicarious liability claim against the G6 Defendants fails to state a claim.

Because K.B.'s TVPRA claim against the G6 Defendants fails to state a claim, the state law claim fails as well. The language of the state law is virtually identical to that of 18 U.S.C. § 1595(a). *See* O.C.G.A. § 51-1-56. The Court sees no basis for reading O.C.G.A. § 51-1-56 as broader than § 1595(a), and K.B. provides none either. As such, the Court grants the G6 Defendants' Motion to Dismiss as to all claims against them.

### D. Franchisee's Liability

This leads the Court to whether K.B. has properly stated a claim against Hare Krishna. The Defendants assert that K.B.'s Complaint does not sufficiently allege that Hare Krishna had notice of or participated in the alleged trafficking. (G6 Defs.' Br. in Supp. of Mot. to Dismiss, at 23-25). The Court finds their arguments to be unpersuasive at this stage.

Regarding notice, K.B. alleges that she was at the motel for months with few pieces of clothing and without any luggage other than a purse, that there was an "absurd amount" of condoms in the trash can, and that housekeeping was met at the door for towels and not permitted to enter the room. (Compl. ¶ 56). She further alleges that there were 4-10 "johns" entering and leaving her room every single day for 16 weeks. (*Id.* ¶ 57). These "johns" were at the motel during unusual hours and were only present for brief periods of time. (*Id.* ¶ 95). While they were in the room sexually assaulting K.B., her trafficker

waited outside, in plain view of the staff and security cameras. (*Id.* ¶¶ 55, 57, 82). K.B. was not allowed to go anywhere on her own except to purchase the motel rooms in her name and in cash. (*Id.* ¶ 54). While paying for the rooms, she looked nervous and afraid when interacting with motel staff (*Id.* ¶ 56). She also had visible injuries from the physical abuse she suffered at the hands of her trafficker. (*Id.* ¶ 52).

The Defendants argue that these allegations are insufficient to establish that Hare Krishna knew or should have known about the trafficking because there is no allegation "that hotel staff actually witnessed Plaintiff being physically attacked, restrained, or coerced in connection with commercial sex work." (G6 Defs.' Br. in Supp. of Mot. to Dismiss, at 24-25). As such, the Defendants contend that at most, the allegations support an inference that Hare Krishna should have known prostitution was occurring at the motel, which is insufficient to establish liability under the TVPRA. (*Id.*, at 23-24). The Defendants mischaracterize the law insofar as they suggest that there is a requirement for a plaintiff to allege that hotel staff actually witnessed force being used against that plaintiff. There are several cases in which motions to dismiss have been denied without any such allegation. *See, e.g.*, *J.G.*, 619 F. Supp. 3d at 1238-39; *A.G. v. Northbrook Indus., Inc.*, 2022 WL 1644921, at *4 (N.D. Ga. May 24, 2022). The reason for that is clear. The TVPRA provides a cause of action against a beneficiary that "knew or should have known" that a

venture in which it participated violated the TVPRA. 18 U.S.C. § 1595(a). Requiring an allegation that a defendant actually witnessed the trafficking would create an actual knowledge element and render the words "or should have known" meaningless.

Since the failure to allege witnessed use of force against her does not warrant dismissal, the Court looks to K.B.'s allegations to find support for a finding of constructive knowledge. K.B. regularly interacted with the staff when she paid for the rooms, and when doing so, she had visible physical injuries from her trafficker and was noticeably nervous and afraid. Viewing the nonconclusory allegations in the light most favorable to K.B., the Court finds that K.B. has plausibly alleged that Hare Krishna should have known that trafficking rather than prostitution was causing the extreme foot traffic, excessive condoms, and refusal to admit housekeeping.

As for participation, the Defendants assert that K.B.'s allegations merely state that Hare Krishna ignored any alleged trafficking, rather than participating in the trafficking. Citing to *Red Roof*, the Defendants state that this is insufficient since "observing something is not the same as participating in it." *Red Roof*, 21 F.4th at 727. The difference between *Red Roof* and this case is that in *Red Roof*, the plaintiffs did not allege that the franchisors did anything to assist the traffickers. *Id.* at 726-27. By contrast, K.B. notably alleges that Hare Krishna purposely provided rooms to the traffickers that

were in the back and therefore not visible from the street. (Compl. ¶ 82) ("Motel 6 Savannah promoted such activity by providing rooms at the back of the property, which was out of site from the street. This was a specific decision made by the staff at Motel 6 Savannah to assist and support activity they knew or should have known was illegal sex trafficking."). Making efforts to conceal trafficking that Hare Krishna knew or should have known was going on is not merely observing trafficking. It is not akin to merely receiving royalties from rooms. Rather, it was an affirmative act Hare Krishma did that possibly caused K.B.'s trafficking (and the benefits Hare Krishna allegedly received from it) to continue for a longer time. The Court finds that K.B. has sufficiently alleged a claim against Hare Krishna under the TVPRA. To the extent that the Defendants argue Hare Krishna cannot be found liable under O.C.G.A. § 51-1-56 "for the same reasons" that it cannot be found liable under the TVPRA, those arguments are rejected as well. (G6 Defs.' Br. in Supp. of Mot. to Dismiss, at 25).

### E. Vagueness

Since the Court has concluded that K.B. has stated a claim against Hare Krishna, the Court reaches the constitutional issue of whether the TVPRA is void for vagueness. Hare Krishna contends that the words "participation in a venture," the scienter requirement, and the damages provision are all so unclear that it would violate Hare Krishna's due process rights to enforce these

provisions against it. (Hare Krishna's Br. in Supp. of Mot. to Dismiss, at 10-17). The Court disagrees.

It is hard to understate the extreme breadth that Hare Krishna would have this Court give to the void-for-vagueness doctrine. Hare Krishna argues that if, when interpreting a statute, a court has to "finely decipher on a broad spectrum the assumed-to-be-true allegations of alleged misconduct," enforcement of that statute would be unconstitutional. (Reply Br. to Hare Krishna's Mot. to Dismiss, at 12; *see also* Hare Krishna Br. in Supp. of Mot. to Dismiss, at 11 n. 6 ("[T]he fact that the Court had to wrestle with a definition of the term goes to show how vague it is and how little that term conveys to a common person")). Moreover, Hare Krishna insists that "[t]his is simple — if the courts are divided on what the beneficiary is supposed to know or should have known, the TVPRA is unconstitutionally vague." (Hare Krishna Br. in Supp. of Mot. to Dismiss, at 16). Moreover, even if lower courts agree on the meaning of a law, Hare Krishna claims that the law is still unconstitutionally vague if it is ambiguous and the Supreme Court has not ruled on it. (*Id.*, at 17) ("Lower courts have held that punitive damages, for example, are recoverable, but the United States Supreme Court has not addressed the question."). Under Hare Krishna's interpretation, precious few laws would ever be able to pass constitutional muster. Perhaps then it is unsurprising that the void-for-vagueness doctrine is much more limited than what Hare Krishna

claims and does not reach the TVPRA in these circumstances.

"The void-for-vagueness doctrine reflects the principle that a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984) (alteration in original) (quotation marks and citation omitted). A vagueness challenge "may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). Moreover, there is "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498-99 (1982) (footnote omitted).[6]

Applying these standards to the TVPRA, the Court finds that the statute is not unconstitutionally vague. For starters, Hare Krishna points to the

---

[6]  It is unclear whether the void-for-vagueness doctrine applies at all to private rights of action sounding in tort. (Pl.'s Br. in Opp'n to Hare Krishna's Mot. to Dismiss, at 14-15). However, the cases that have found that there is not a sufficient "exaction" for the doctrine to apply have arisen in different contexts. *Boutilier v. INS*, 387 U.S. 118, 123 (1967) (a challenge to immigration inadmissibility standards); *Weigel v. Maryland*, 950 F. Supp. 2d 811, 834 (D. Md. 2013) (a challenge to a court decision applying strict liability rather than a negligence standard to pit bull owners whose dog injures another). Since this law is not unconstitutionally vague even if the doctrine does apply, the Court will assume without deciding that the doctrine is applicable here.

phrase "participation in a venture" as being vague and cites to a Third Circuit opinion for support. (Hare Krishna's Br. in Supp. of Mot. to Dismiss, at 10-12). However, *Borden v. School. Dist. of Tp. Of East Brunswick*, 523 F.3d 153, 166-67 (3d Cir. 2008), does not support Hare Krishna's position. The court there found that the word "participate" may be vague if it is read in isolation but concluded it was not vague because of the context surrounding the word. *Id.* at 167. Similarly, the context surrounding the words "participate in a venture" imports meaning to the phrase. First, the statute does not refer to participation in any venture but rather only ventures that violate the TVPRA. 18 U.S.C. § 1595(a). Thus, other provisions of the TVPRA lend meaning to the phrase, in this case 18 U.S.C. § 1591. Second, the statute only subjects beneficiaries to liability if they "knew or should have known" that the venture violated the TVPRA. 18 U.S.C. § 1595(a). This scienter requirement further undermines Hare Krishna's vagueness argument. *See Mishkin v. New York*, 383 U.S. 502, 510-11; *Screws v. U.S.*, 325 U.S. 91, 103-04 (1945). Finally, to the extent that courts disagree about what it means to participate in a venture that violates the TVPRA or what is sufficient for constructive knowledge of that violation, such disagreement is not a reason to find the statute unconstitutionally vague. *U.S. v. Kernell*, 667 F.3d 746, 754 (6th Cir. 2012) ("Even if true, the fact that different courts have interpreted a statute differently does not make the statute vague—if that were true, a circuit split

over the interpretation of a criminal statute would by definition render the statute unconstitutional."). Given that § 1595(a) is a civil statute, that it clearly limits its reach to ventures in violation of the TVPRA, and that it has a scienter requirement, the Court finds that the phrase "participation in a venture" is not unconstitutionally vague.

Hare Krishna goes on to challenge the scienter requirement itself as unconstitutionally vague because it gives fact finders too much latitude to decide a defendant's liability. (Hare Krishna's Br. in Supp. of Mot. to Dismiss, at 12-16). More concretely, Hare Krishna asserts that because sex trafficking is so difficult to identify, judges and jurors have no fixed standards on which they can decipher whether a defendant should have known that trafficking was occurring. (*Id.*, at 13).[7] However, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *U.S. v. Williams*, 553 U.S. 285, 306 (2008). Here,

───────────────

[7] Hare Krishna also makes the fanciful argument that, because § 1595(a) permits the finding of liability when the defendant "should have known" there was sex trafficking, the law could force hotel owners to engage in racial profiling. (Hare Krishna's Br. in Supp. of Mot. to Dismiss, at 14). Tellingly, Hare Krishna does not point to a single case in which it has even been suggested that a hotel owner should be held liable for failing to racially profile. Nor does Hare Krishna point to a single allegation in this case that says or implies that Hare Krishna should be liable because it did not racially profile. This argument is utterly unsubstantiated.

while it can undoubtedly be difficult to determine at what point an entity "should have known" that sex trafficking was occurring, that does not change the fact that we know what we are looking for. Furthermore, to the extent that Hare Krishna again argues that this statute is unconstitutional because courts disagree on how to interpret it, that argument is again rejected. *See Kernell*, 667 F.3d at 754. As such, the Court finds that the scienter requirement is not unconstitutionally vague.

Finally, Hare Krishna contends that the damages provision is unconstitutional because it is ambiguous as to whether punitive damages are permitted. (Hare Krishna's Br. in Supp. of Mot. to Dismiss, at 17; Reply Br. in Supp. of Hare Krishna's Mot. to Dismiss, at 13-14). However, as K.B. points out, Hare Krishna confuses ambiguity for unconstitutional vagueness and neglects the fact that interpreting ambiguous statutes is an essential function of the judiciary. (Pl.'s Br. in Opp'n to Hare Krishna's Mot. to Dismiss, at 24 n. 10). Accordingly, *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011), which stated that "the term 'damages' [within 18 U.S.C. § 1595] is ambiguous," does not support Hare Krishna's argument. In fact, in that case, the Ninth Circuit went on to quote the Supreme Court saying: "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Id.* (quoting *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 70-71

(1992)). This statement contemplates the fact that sometimes remedy provisions in federal statutes will be ambiguous. The solution, according to the Supreme Court, is to assume that federal courts have the power to award any appropriate relief, not to find the enforcement of the statute is unconstitutionally vague. Additionally, because this is a cause of action sounding in tort, common law principles dictate when punitive damages may be permitted. *Id.* at 1097 ("The Supreme Court has looked to the common law to determine the remedies available under federal statutes creating causes of action sounding in tort."). That common law background adds meaning to the terms of the damages provision and further undermines Hare Krishna's vagueness argument. The Court therefore finds that none of the applicable provisions of the TVPRA are unconstitutionally vague.

### F. Retroactivity

Hare Krishna seeks dismissal of the state law claim against it because O.C.G.A. § 51-1-56 did not become effective until July 1, 2021, and because the statute does not have retroactive application to events that occurred in 2016. (Hare Krishna's Br. in Supp. of Mot. to Dismiss, at 17-20). K.B. disagrees and states that (1) the law's text clearly states it is applicable to behavior that occurred before 2021, and (2) there is no presumption against retroactive application when there is another statue that existed at the time of the actions that imposes similar or more stringent penalties. (Pl.'s Br. in Opp'n to Hare

31

Krishna's Mot. to Dismiss, at 25). The Court finds that neither of K.B.'s arguments are persuasive.

On the first point, the statute states in relevant part: "Notwithstanding any other law to the contrary, an action may be brought under subsection (b) of this Code section within ten years after the…[c]ause of action arose." O.C.G.A. § 51-1-56(d)(1). K.B. contends that this language clearly states it applies to actions that occurred within ten years before the date the law was signed; Hare Krishna claims that this provision is merely a statute of limitation that applies prospectively. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 24-25; Reply Br. in Supp. of Hare Krishna's Mot. to Dismiss, at 14-15). Both of these are plausible readings of the statute. Georgia courts have found that "a statute is not to be construed retroactively in operation *unless the language of the statute imperatively requires it.*" *Dowdy v. Earthwise Rest. Mgmt., Inc.*, 221 Ga. App. 220, 223 (1996) (quotation marks and citation omitted); *see also* O.C.G.A. § 1-3-5 ("Laws prescribe only for the future."). If this presumption applies, then the statute at issue is not so clear that the language "imperatively requires" retroactive application. *Compare* O.C.G.A. § 51-1-56(d)(1) ("[A]n action may be brought under subsection (b) of this Code section within ten years after the…[c]ause of action arose") *with* O.C.G.A. § 34-9-11.1(e) ("It is the express intent of the General Assembly that the provisions of subsection (c) of this Code section be applied not only prospectively but also retroactively to injuries

occurring on or after July 1, 1992.").

That brings the Court to K.B.'s second point, namely that because the TVPRA existed in 2016, the presumption against retroactive operation should not apply. (Pl.'s Br. in Opp'n to Hare Krishna's Mot. to Dismiss, at 25-26). Under the Georgia Constitution, "legislation which affects substantive rights may operate prospectively only." *Daimler Chrysler Corp. v. Ferrante*, 281 Ga. 273, 274 (2006) (citations omitted). "Substantive law is that law which creates rights, duties, and obligations." *Polito v. Holland*, 258 Ga. 54, 55 (1988). Therefore, the question is whether O.C.G.A. § 51-1-56 created any rights, duties, or obligations. Even though O.C.G.A. § 51-1-56 closely mirrors the TVPRA, which already existed in 2016, the statute creates a new cause of action under state law and therefore creates new duties under state law as well. K.B. has failed to provide a single case in which the presence of a federal statute permitted the retroactive application of a state statute. Accordingly, the Court finds that the presumption against retroactivity applies and that O.C.G.A. § 51-1-56 does not overcome that presumption. The state law claim against Hare Krishna is therefore dismissed.

### G. Disclosure of Plaintiff's Identity

Finally, Hare Krishna moves for the private disclosure of K.B.'s identity because of prejudice it has endured due to K.B.'s refusal to disclose her identity. (Hare Krishna Br. in Supp. of Mot. for Disclosure, at 5). K.B. responds

33

that she has a strong privacy interest that will be infringed if her identity is disclosed without a protective order. (Pl.'s Br. in Opp'n to Mot. for Disclosure, at 4-6). Under Federal Rule of Civil Procedure 10(a), "[t]he title of the complaint must name all the parties." As the Eleventh Circuit said, "[t]his creates a strong presumption in favor of parties' proceeding in their own names. Defendants have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (citation omitted). Parties can proceed anonymously in rare circumstances, but "the proper procedure in this Circuit is for a party to file a motion for leave to proceed anonymously." *Doe v. Pierce Cnty., Ga.*, 2019 WL 1937577, at *4 (S.D. Ga. May 1, 2019) (compiling cases). "Merely deciding to proceed anonymously without first seeking leave of the Court violates Federal Rule of Civil Procedure 10(a)." *Id.* K.B. has done just that. The Court thus directs K.B. to either seek leave to proceed anonymously or disclose her identity within 14 days of this Order.[8]

---

[8] To the extent that Hare Krishna argues that K.B. cannot now seek leave to proceed anonymously because she failed to do so in her initial complaint, that argument is not borne out by the case law. Several cases in this Circuit have permitted parties to request leave to proceed anonymously after filing an original complaint that did not include such a motion. *See, e.g.*, *Doe v. City of Vero Beach*, 2019 WL 3751771, at *3-4 (S.D. Fla. Aug. 8, 2019); *Pierce Cnty., Ga.*, 2019 WL 1937577, at *4 (S.D. Ga. May 1, 2019) ("Therefore, if Plaintiff decides to file an amended complaint after this Order, it must either include the Plaintiff's name or file, along with the amended complaint, a motion for leave to proceed anonymously.").

## IV.   Conclusion

For the reasons explained above, the Defendant Hare Krishna's Motion to Dismiss [Doc. 17] is GRANTED in part and DENIED in part, the G6 Defendants' Motion to Dismiss [Doc. 27] is GRANTED, the Defendant Hare Krishna's Motion to Join and Adopt Select Arguments from the G6 Defendants' Motion to Dismiss [Doc. 29] is GRANTED, and the Defendant Hare Krishna's Motion for the Private Disclosure of Plaintiff's Identity [Doc. 35] is DENIED as to the specific relief requested. K.B. is DIRECTED to either seek leave to proceed anonymously or disclose her identity within 14 days of the date of this Order.

SO ORDERED, this ____14th____ day of December, 2023.


THOMAS W. THRASH, JR.
United States District Judge

35