IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANE DOE (K.B.),

    Plaintiff,

    v.

HARE KRISHNA SAVANNAH
HOTEL, LLC,

    Defendant.

CIVIL ACTION FILE
NO. 1:23-CV-2597-TWT

## OPINON AND ORDER

This is a Trafficking Victims Reauthorization Protection Act ("TVPRA") case. It is before the Court on the Plaintiff's Motion to Proceed Under Pseudonym and for Protective Order [Doc. 40] and Plaintiff's Motion for Leave to Amend [Doc. 44]. The Plaintiff's Motion to Proceed Under Pseudonym and for Protective Order [Doc. 40] is GRANTED subject to the amendments noted herein and the Plaintiff's Motion for Leave to Amend [Doc. 44] is GRANTED.

## I.    Background

This case arises out of the alleged sex trafficking of Plaintiff K.B. at a Motel 6 in Savannah, Georgia. An individual named Jason King allegedly forced and kept K.B. in human trafficking by physically assaulting her, keeping her identification documents, not allowing her to keep any money, and isolating her from her loved ones. (Compl. ¶ 52). K.B. alleges she was trafficked at the Motel 6 in Savannah between August 2016 and December 2016, during which time King forced her to have sex for profit. (*Id.* ¶¶ 52-53). K.B. filed the

present action asserting a civil beneficiary claim under the TVPRA and O.C.G.A. § 51-1-56 against the Savannah Motel 6's franchisor—the G6 Defendants[1]—and its franchisee, Hare Krishna Savannah Hotel, LLC ("Hare Krishna"). In its previous Opinion and Order, the Court dismissed all the claims against the G6 Defendants and dismissed the state law claim against Hare Krishna. *Doe (K.B.) v. G6 Hosp., LLC*, 2023 WL 8650785, *8-12 (N.D. Ga. Dec. 14, 2023). The Court also ordered K.B. to either seek leave to proceed anonymously or disclose her identity to Hare Krishna within 14 days of the Order. *Id.* at *13. K.B. has now filed a Motion to Proceed Under Pseudonym and for Protective Order [Doc. 40]. She also seeks leave to amend the Complaint to restate her TVPRA claim against the G6 Defendants.

## II.   Legal Standard

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R.

---

[1] The G6 Defendants included G6 Hospitality, LLC; G6 Hospitality Franchising, LLC; G6 Hospitality IP, LLC; G6 Hospitality Purchasing, LLC; G6 Hospitality Property, LLC; and Motel 6 Operating, LP. They operate a franchising system of hotels that includes the Savannah Motel 6, which is where the alleged violation of the TVPRA occurred in this case. (Compl. ¶ 59).

Civ. P. 26(c)(1). "'Good cause' is a well established legal phrase. Although difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). The Eleventh Circuit "has identified four factors for ascertaining the existence of good cause which include: [1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order." *Id.* (quotation marks and citation omitted). "In addition to requiring good cause, [the Eleventh Circuit] has also required the district court to balance the interests of those requesting the order." *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91 (11th Cir. 1989) (citation omitted). "The burden is on the movant to show the necessity of the protective order, and the movant must meet this burden with a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011) (quotation marks and citation omitted).

Additionally, when a party is not entitled to amend its pleading as a matter of course, it must obtain the opposing party's consent or the court's permission to file an amendment. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) provides that a court should "freely" give leave to amend a pleading "when justice so requires." *Id.* Although a discretionary decision, the Eleventh Circuit

3

has explained that "district courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mkgt. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021). Generally, "where a more carefully drafted complaint might state a claim, a plaintiff must be given *at least one* chance to amend the complaint before the district court dismisses the action with prejudice." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022) (citation omitted). There are three exceptions to this rule: "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.* (citation and alteration omitted).

### III.   Discussion

The Court considers each of K.B.'s motions in turn.

#### A. Motion to Proceed Under Pseudonym

K.B.'s first motion is to proceed under a pseudonym. "Hare Krishna is…not opposed to Plaintiff's request to proceed under pseudonym *for pretrial purposes only*." (Hare Krishna's Br. in Opp'n to Mot. to Proceed Under Pseudonym & for Protective Order ("Mot. for Protective Order"), at 2). Hare Krishna strenuously objects to K.B. proceeding pseudonymously during a future trial. (*Id.*, at 2-7). In her Reply Brief, K.B. has clarified that "Plaintiff is

not currently asking the Court to allow her to proceed pseudonymously at trial—she asks that the Court allow her to proceed pseudonymously for pre-trial purposes and to reevaluate the issue when it is time for trial." (Reply Br. in Supp. of Mot. for Protective Order, at 3). Since Hare Krishna does not oppose K.B.'s Motion as it relates to pretrial proceedings and K.B. is not requesting to proceed under a pseudonym at trial, the Court grants K.B.'s Motion to Proceed Under Pseudonym [Doc. 40]. If K.B. later seeks to proceed pseudonymously at trial, Hare Krishna may raise objections it has at that time.

### B. Motion for Protective Order

Next, K.B. moves for a protective order and has provided the Court with a proposed order. (K.B.'s Br. in Supp. of Mot. for Protective Order, at 2, Ex. 1). Hare Krishna objects to five terms in the proposed protective order and offers amendments. (Hare Krishna's Br. in Opp'n to Mot. for Protective Order, at 9, Ex. 1). In her Reply Brief, K.B. states that she does not object to the changes Hare Krishna requests to Section XI(C).[2] (Reply Br. in Supp. of Mot. for

---

[2] The proposed protective order states, "This Order shall be binding upon the Parties, their Outside Counsel, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control." (Br. in Supp. of Mot. to Proceed Under Pseud. & for Protect. Order, Ex. 1 at 22). Hare Krishna requests deleting "and their successors, executors, personal representatives, administrators, heirs, legal representatives, [and] assigns" from that provision. (Hare Krishna's Br. in Opp'n to Mot. to Proceed Under Pseud. & for Protect. Order, Ex. 1 at 4).

Protective Order, at 3). The Court accordingly will adopt Hare Krishna's amendments to Section XI(C) of the proposed protective order. Hare Krishna's other suggested changes are contested, so the Court will consider each of those.

> **i.   Discovery Material Obtained from Law Enforcement and Government Agencies**

Hare Krishna's first two objections to the proposed protective order involve Sections III(C)(ii) and (xiv). (Hare Krishna's Br. in Opp'n to Mot. for Protective Order, at 9-12). Section III(C)(ii) states that access to K.B.'s identity information may be provided to:

> Law enforcement agencies and agency personnel, but only to the extent that the disclosure of Plaintiff's Identity is necessary to litigate any claims or defenses or to comply with any Parties discovery obligations or requirements. *To the extent that Discovery Materials are obtained, a copy shall be provided to Plaintiff upon receipt.*

(K.B.'s Br. in Supp. of Mot for Protective Order, Ex. 1 at 9) (emphasis added). Hare Krishna objects to the emphasized portion.[3]  (Hare Krishna's Br. in Opp'n to Mot. for Protective Order, at 10). Section III(C)(xiv) has substantially the same language but permits access to K.B.'s identifying information to

---

[3] Hare Krishna asks that the emphasized portion above is replaced with the following language: "To the extent that Discovery Materials are obtained, a copy shall be provided to all Parties upon receipt so long as the Discovery Materials are responsive to a proper and non-objectionable discovery request. Nothing herein shall be construed as a waiver of any objections that a Party may have to discovery requests or the production of Discovery Materials pursuant to this provision." (Hare Krishna's Br. in Opp'n to Mot. for Protective Order, Ex. 1 at 2).

"[g]overment agencies and agency personnel." (K.B.'s Br. in Supp. of Mot for Protective Order, Ex. 1 at 11) Hare Krishna makes the same objection and seeks the same amendment to this provision as it did to Section III(C)(ii). (Hare Krishna's Br. in Opp'n to Mot. for Protective Order, at 10).

Hare Krishna has raised three objections to the last sentence to these provisions: (1) the provision is one-sided because it states that only K.B.—and not Hare Krishna—shall be provided with discovery material obtained from law enforcement and government agencies, (2) the provision will require Hare Krishna to produce privileged information, and (3) the provision requires automatic production of materials equally available to all parties. (Hare Krishna's Br. in Opp'n to Mot. for Protective Order, at 10-12). K.B. responds that she "has no objection to requiring that a copy be provided to all parties" but that Hare Krishna's "proposed language would unnecessarily complicate the process" because Hare Krishna "should only be requesting information from sources it has determined are likely to have relevant information to a claim or defense and thus, any information received will be discoverable under disclosure provisions and standard discovery responses." (Reply Br. in Supp. of Mot. for Protective Order, at 5-6).

This does not answer Hare Krishna's concerns. Specifically, K.B. does not address the fact that Hare Krishna has no more access to law enforcement or government records than K.B. does. Several courts have held that a party is

not required to produce public records that are equally accessible to both parties. *SEC v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties." (citation omitted)); *Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991) (same); *Bleecker v. Standard Fire Ins. Co.*, 130 F. Supp. 2d 726, 739 (E.D.N.C. 2000) ("As the manuals issued by the National Flood Insurance Program are public records which are readily accessible to plaintiff, defendant is not required to produce these documents."). The Court will therefore not require Hare Krishna to automatically produce all the records that it receives from law enforcement and government agencies.[4] Since K.B. has not met her burden of showing that there is good cause for the automatic disclosure provision as written in the proposed protective order, the Court adopts Hare Krishna's amendment to the proposed protective order.

---

[4] Of course, the Court expects the parties to comply with Rule 26 for disclosure of documents "that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment" or risk having the evidence excluded from trial, hearings, and motions under Rule 37(c)(1). *See C & H Liquor Store, Inc. v. Harleysville Preferred Ins. Co.*, 413 F. Supp. 3d 1238, 1243-44 (N.D. Ga. 2019).

ii.   **Witnesses' Confidentiality Agreement Requirement**

Hare Krishna also takes issue with a provision of the proposed protective order that requires parties to obtain an executed non-disclosure agreement from potential witnesses before providing them any of K.B.'s identifying information. (Hare Krishna's Br. in Opp'n of Mot. for Protective Order, at 13-15). The provision reads:

> Access to "PLAINTIFF'S IDENTITY" information shall be limited to, and only to, the following:…v. Any witness who Counsels for a Party in good faith believes may be called to testify at trial or deposition in this action, *and who execute the Acknowledgment and Agreement to Be Bound attached to this Protective Order as Exhibit A.*

(K.B.'s Br. in Supp. of Mot. for Protective Order, Ex. 1 at 9-10 (emphasis added)). Hare Krishna asserts that the emphasized portion of the proposed provision should be removed. (Hare Krishna's Br. in Opp'n of Mot. for Protective Order, at 15). The Court will not do so.

Hare Krishna argues that requiring potential witnesses to sign a non-disclosure agreement before giving them K.B.'s identity information would "severely restrict the ability of Hare Krishna to investigate the issues in this case and defend itself." (*Id.* at 13). Despite concerns about how it would affect defendants' ability to investigate, courts have consistently found that this type of provision is warranted to protect TVPRA plaintiffs' identities. *See, e.g., S.Y. v. Jay Varahimata Invs., LLC*, 2021 U.S. Dist. LEXIS 139036, at *38-41 (M.D. Fla. June 11, 2021); *J.C. v. Choice Hotels Int'l, Inc.*, 2021 WL 1146406, at *6-7

(N.D. Cal. Mar. 4, 2021); *E.S. v. Best Western Int'l, Inc.*, 2021 WL 37458, at *2-3 (N.D. Tex. Jan 4, 2021); *A.D. v. Wyndham Hotels & Resorts*, 2020 U.S. Dist. LEXIS 250685, at *9 (E.D. Va. Sept. 21, 2020). Hare Krishna makes no attempt to address or distinguish these cases.

In fact, the only case Hare Krishna cites to in its whole argument against this provision is *GSM Inc. Glob. Sales Mktg. v. High Tech Pet Prods., Inc.*, 2016 U.S. Dist. LEXIS 29082, at *2-3 (N.D. Ind. Mar. 8, 2016). However, that case involved a meaningfully different provision. The proposed protective order there stated that witnesses "must read a copy of this Agreement and Order and agree in writing to abide by the same by signing" a non-disclosure agreement. *Id.* at *2. The way this provision was written would have required witnesses to sign the non-disclosure agreement or face possible contempt penalties. *Id.* The court rejected that provision and then stated, "Perhaps the parties' intent was for the Court to rule that disclosure of Confidential Information to the witness was permissible, so long as the witness signs the endorsement of the protective order. If that is the case, the parties should clarify their intent in this paragraph in any revised proposed protective order." *Id.* at *2-3. The provision at issue here does not require potential witnesses to sign the nondisclosure agreement but instead conditions disclosure of K.B.'s identifying information on an agreement not to disclose her identity. Thus, *GSM Inc.* does not support a holding that the provision at issue here is without

10

good cause. If anything, it implies that such a provision is warranted.

At bottom, K.B. has a strong privacy interest in this case. (*See* K.B.'s Br. in Supp. of Mot. for Protective Order, at 6-10). The Court's efforts to protect that privacy interest "would be meaningless in the absence of restrictions on Defendant's ability to disseminate her identifying information." *A.D.*, 2020 U.S. Dist. LEXIS 250685, at *9. If Hare Krishna could give K.B.'s identifying information to anyone who it believes could be called at trial or for a deposition, and if those individuals could disseminate K.B.'s identifying information at will, the protective order would be little more than a paper tiger. The Court therefore concludes that there is good cause for this provision and that the balance of the interests weighs in favor of K.B. Following other courts that have addressed this issue, the Court adopts the provision as written in the proposed protective order and rejects Hare Krishna's amendment.

### iii.   Disclosure of Identity to Trafficker and Associates

The final term of the proposed protective order that Hare Krishna objects to is Section III(C)(xv). That section permits access to K.B.'s identifying information to:

> The Plaintiff's trafficker and/or the trafficker's associates, but only after providing 30-day notice to the Plaintiff of the intention to contact the trafficker to permit Plaintiff to seek further protection from the Court should it be necessary. The Plaintiff's Identity will be revealed to the trafficker and/or associates only to the extent necessary to assist in their recollection of Plaintiff and her trafficking history, Plaintiff's and Plaintiff's family's physical location will never be disclosed to Plaintiff's trafficker and/or the

trafficker's associates[.]

(K.B.'s Br. in Supp. of Mot for Protective Order, Ex. 1 at 11-12). Hare Krishna raises two objections to this provision. First, it argues that the 30-day notice requirement is unnecessary because Hare Krishna has already complied with it. (Hare Krishna's Br. in Opp'n of Mot. for Protective Order, at 16). Second, Hare Krishna argues that the limitation that it can reveal K.B.'s identifying information "only to the extent necessary to assist in their recollection of Plaintiff and her trafficking history" is too ambiguous. (*Id.*). The Court finds merit in the first objection but rejects the second objection entirely.

Starting with the 30-day notice requirement, Hare Krishna contends that it informed K.B. months ago that it intends to contact K.B.'s alleged trafficker. (*Id.*). Furthermore, Hare Krishna states in its brief that it "hereby gives notice to Plaintiff of its 'intention to contact the trafficker and[] the trafficker's associates,' as that phrase is used in Section III(C)(xv) of the Proposed Protective Order." (*Id.* at 16 n. 8). Because of this, Hare Krishna argues that it has already provided K.B. the 30-day notice of its intention to contact K.B.'s alleged trafficker and his associates and that there is no good cause to include this term in the protective order. (*Id.* at 16). The Court agrees in part and disagrees in part.

One the one hand, K.B. was presumably aware when she filed this suit that it was likely that her trafficker would be contacted at some point. Even if

she was not aware at the time of filing, Hare Krishna's subsequent communications to K.B. gave her notice. *See J.C.*, 2021 WL 1146406, at *5 ("[T]his advance notice provision unnecessarily delays the inevitable because J.C.'s counsel has been aware for at least seven months that they need and intend to speak with her trafficker to understand from his perspective whether and under what circumstances she was trafficked at the identified hotels."). On the other hand, K.B. points out that this notice provision gives her "an opportunity to take any steps necessary to protect her personal safety." (K.B.'s Br. in Supp. of Mot. for Protective Order, at 15). "If K.B. is unaware that her trafficker(s) has been contacted, there is a higher likelihood that the trafficker could catch her off guard." (*Id.*). The Court finds this to be a legitimate interest that can be achieved by less onerous means.

The Court amends the proposed protective order to require Hare Krishna to inform K.B. of the date on which it intends to provide K.B.'s identifying information to her alleged trafficker at least seven (7) days prior to doing so. To ensure work product is properly protected, Hare Krishna need only inform K.B. of the name of the trafficker and the date on which Hare Krishna first intends to disclose her identifying information to that individual. Given that other parts of this provision limit the type of information Hare Krishna can disclose to K.B.'s trafficker and his associates, the Court finds that this will protect K.B.'s safety interest and give her adequate notice to prevent her

from being caught off guard by her trafficker.[5]

Turning to the limitation on the extent to which Hare Krishna can disclose K.B.'s identity, Hare Krishna asserts that different people may have different views on what is necessary to assist K.B.'s trafficker and his associates with their recollection of K.B. and her trafficking history. According to Hare Krishna, this is sufficient to undermine good cause for this aspect of the proposed protective order. Hare Krishna is wrong. For starters, there are several cases that adopted protective orders with similar language. *See, e.g.*, *S.C. v. Wyndham Hotels & Resorts, Inc.*, 2023 WL 6290688, at *3 (N.D. Ohio Sept. 27, 2023) (permitting disclosure of the plaintiff's identity to "Plaintiff's Alleged Trafficker(s) and their counsel, but only to the extent Plaintiff's True Identity will assist the witness in recalling, relating or explaining facts"). *M.L. v. Craigslist Inc.*, 2020 WL 5701835, at *2 (W.D. Wash. Sept. 24, 2020) (allowing disclosure of plaintiff's identity to "plaintiff's known trafficker(s) or

_____

[5] The Court notes that "[c]ourts have generally adopted one of two procedures: (i) requiring the parties to meet and confer and, if a stipulated motion cannot be submitted, filing a motion seeking an order from the court in which a defendant explains the necessity of the disclosure; or (ii) requiring a defendant to send a letter to the court ex parte and in camera describing the information sought and explaining the necessity of the disclosure." *J.C.*, 2021 WL 1146406, at *5. Both of these raise possible concerns about their appropriateness given the facts of the case. *See S.Y.*, 2021 U.S. Dist. LEXIS 139036, at *34-37. Here, K.B. has only requested that an advance notice requirement be put in place and does not seek either of these alternative procedures. Since the parties have not briefed whether these procedures would be appropriate in this case, the Court does not reach those issues.

plaintiff's traffickers' known affiliate(s) and their counsel, but only to the extent plaintiff's true identity will assist the witness in recalling, relating or explaining facts"); *A.C. v. Red Roof Inns, Inc.*, 2020 WL 5361731, at \*5 (S.D. Ohio Sept. 8 2020) ("Plaintiff's true identity may be disclosed to Plaintiff's known trafficker(s), and his or her counsel, only to the extent that Plaintiff's true identity will assist the witness in recalling, relating, or explaining facts or in testifying."). Meanwhile, Hare Krishna has not pointed to a single case that has found this type of language to be impermissibly ambiguous.

Furthermore, Hare Krishna has not provided any language to clarify the provision. (Hare Krishna's Br. in Opp'n to Mot. for Protective Order, Ex. 1 at 3). It instead deletes the entire limitation and permits itself to provide K.B.'s alleged trafficker with K.B.'s identifying information for any purpose whatsoever (so long as Hare Krishna does not provide her or her family's physical location). (*Id.*). While "the precision with which the order is drawn" is a factor to consider when determining good cause, *In re Alexander*, 820 F.2d at 356 (citation omitted), that does not mean that the mere possibility of a future conflict about the reach of the protective order destroys good cause.[6] Nor does

---

[6] The Court points out that the proposed protective order allows K.B. to provide Hare Krishna's confidential information to her representatives, counsel, and insurance adjusters only "as needed to litigate any claims or defenses." (K.B. Br. in Supp. of Mot. for Protective Order, Ex. 1 at 7). Yet, Hare Krishna has not objected to these parts of the proposed protective order even though the phrasing is no more precise than the provision that protects K.B.'s

15

it require the Court to adopt an all-or nothing approach as to when a party can use certain information. Thus, considering the good cause factors and the balance of the interests, the Court rejects this amendment to the proposed protective order.

### C. Motion for Leave to Amend

Finally, K.B. seeks leave to amend her Complaint so that she can restate her TVPRA claim against the G6 Defendants. The G6 Defendants oppose granting leave to amend for four reasons:

> (1) Amendment would inherently cause prejudice and undue delay because it comes after the filing, briefing, and decision of a dispositive motion;
>
> (2) K.B.'s counsel is acting in bad faith by trying to circumvent Rule 12(b)(6), relying instead on Rule 15(a) in a misguided attempt to force this Court to hold their hands through initial pleadings;
>
> (3) K.B. had ample opportunity to cure any pleading deficiencies before this Court entered a dispositive ruling on the merits and with prejudice; and
>
> (4) any amendment would be futile because K.B.'s claims are barred by res judicata.

(G6's Br. in Opp'n to Leave to Amend, at 2-3). While the G6 Defendants style these as "independent reasons" to deny leave to amend, they all rely on the same premise that it is too late to amend the Complaint because K.B. waited

---

identity.

until after the Court ruled on the Rule 12(b)(6) motion to seek leave to amend. This premise is false. The Court thus does not find that any of the reasons provided by the G6 Defendants warrant denying K.B. "*at least one* chance to amend the complaint." *Garcia*, 48 F.4th at 1220 (citation omitted).

In defending its position that K.B. cannot now amend her Complaint, the G6 Defendants rely heavily on *Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 724 F.2d 1552 (11th Cir. 1984) and *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925 (11th Cir. 2016). The G6 Defendants quote *Czeremcha* as stating that a Motion for Leave to Amend "would be inappropriate, however, if the court has clearly indicated either that no amendment is possible or that *dismissal of the complaint also constitutes dismissal of the action.*" (G6 Defs.' Br. in Opp'n to Mot. for Leave to Amend, at 7 (quoting *Czeremcha*, 724 F.2d at 1556 n. 6) (emphasis added in the G6 Defs.' brief)). The G6 Defendants then cite to *Eiber Radiology* for the proposition that "Rule 12(b)(6) dismissals such as the one at issue here constitute a ruling on the merits and with prejudice, unless specified otherwise by the court. (*Id.* at 8 (citing *Eiber Radiology*, 673 F. App'x at 929)). Putting these together, the G6 Defendants argue that if "a case is dismissed under Rule 12(b)(6) for failure to state a claim and the court is silent on whether the dismissal is without prejudice, the dismissal of the action is on the merits and with prejudice and amendment is inappropriate." (*Id.*). Since the Court granted

17

the G6 Defendants' Rule 12(b)(6) motion without stating that it was without prejudice, the G6 Defendants contend that "K.B. cannot now amend." (*Id.* at 9).

The G6 Defendants err in their reading of the case law. In *Czeremcha*, the Eleventh Circuit adopted "the rule that after a complaint is dismissed the right to amend under Rule 15(a) terminates; the plaintiff, however, may still move the court for leave to amend, and such amendments should be granted liberally." *Czeremcha*, 724 F.2d at 1556 (footnote omitted). While the G6 Defendants are correct that the Eleventh Circuit made exceptions to this rule when the trial court clearly indicates that no amendment is permitted or when the dismissal constituted the end of the action, the Eleventh Circuit found that the lower court's granting of the motion to dismiss did not constitute an end to the action. *Id.* at 1555-1556 n. 6. The G6 Defendants argue that *Czeremcha* is distinguishable because the case was dismissed for lack of jurisdiction rather than for failure to state a claim. (G6 Defs.' Br. in Opp'n to Mot. for Leave to Amend, at 6-9). However, there is nothing in the opinion of *Czeremcha* or its progeny that warrants reading such a distinction into this rule.

For starters, the G6 Defendants do not point to any language in *Czeremcha* that suggests its holding is limited to dismissals for lack of jurisdiction. Perhaps that is why the G6 Defendants could not provide a single case that interprets *Czeremcha* as dependent on that basis for dismissal. To

18

the contrary, the cases that cite to *Czeremcha* consistently fail to mention that it was decided on jurisdictional grounds. *See, e.g.*, *Martinair Holland, N.V. v. Benihana, Inc.*, 780 F. App'x 772, 776 (11th Cir. 2019); *Parchment v. Bank of Am., N.A.*, 2018 WL 11344730, at *3 (N.D. Ga. Dec. 18, 2018); *United States ex rel. Carver v. Physicians' Pain Specialists of Ala., P.C.*, 2018 WL 1612842, at *3 (S.D. Ala. Apr. 2, 2018).

Moreover, *Czeremcha* states that the exceptions exist because their effect "would be that of a final order," and they are therefore "immediately appealable." *Czeremcha*, 724 F.2d at 1554 n. 4. Unlike in *Czeremcha*, this case involves multiple defendants. When there are multiple claims or multiple parties—as there are here—Rule 54 applies. That Rule states:

> [T]he court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). The Court in this case never "expressly determine[d] that there is no just reason for delay" and therefore did not enter final judgment or end the action. As such, even if granting a Rule 12(b)(6) motion in *Czeremcha* would have resulted in a dismissal of the action, the Court's Order ruling on the G6's Defendants' Rule 12(b)(6) motion in this case does not. *See Carver,*

19

2018 WL 1612842, at *2 n. 4 ("*Czeremcha* was decided in the context of a one-defendant case, and Castle identifies no principle that could extend *Czeremcha* so as to override Rule 54(b) in a multi-defendant case. In any event, the Court neither dismissed the complaint (it dismissed only the claims therein asserted against Castle), ruled that no amendment is possible, nor stated that it was dismissing the action. Thus, *Czeremcha*'s requirements are not met."). Because neither of the *Czeremcha* exceptions apply, leave to amend should be freely given except "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Garcia*, 48 F.4th at 1220 (alteration and citation omitted).

None of those conditions are present here. Citing to *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999), the G6 Defendants argue that granting leave to amend after dispositive motions have been filed, briefed, and decided causes undue delay and prejudice. (G6 Defs.' Br. in Opp'n to Mot. for Leave to Amend, 9-10). However, they ignore an important condition precedent to *Campbell*'s holding—namely that discovery had closed. In fact, the court there noted that the district court granted leave to amend twice before discovery closed and only denied motions for leave to amend when they "were filed more than one year after discovery had ended, after dispositive motions

had been filed, and between five-and-six years after the lawsuits were begun." *Campbell*, 166 F.3d at 1162, 1162 n. 18. By contrast, there has not been substantial discovery in this case, so the Court cannot say that "prejudice and undue delay are inherent." *Id.* at 1162 (citation omitted); *see also Fresh v. Diamond Dev. Invs., Inc.*, 2015 WL 1046128, at *2 (N.D. Ga. Mar. 9, 2015) ("The Court notes also that no discovery has taken place in this case, and thus the prejudicial effect on RDI, if any exists, is minimal.").

The only other basis that the G6 Defendants provide for undue delay or prejudice is that K.B. is forcing the Court to expend resources when she could have sought amendment before the motion to dismiss was filed, briefed, and decided. (G6 Defs.' Br. in Opp'n to Leave to Amend, at 10). This is simply a repackaging of the above arguments that leave to amend should never be granted if a court grants a Rule 12(b)(6) motion without stating that the plaintiff can seek amendment, and it fails for the same reasons. Furthermore, the overwhelming weight of authorities holds that the expenditure of time, effort, or money to litigate an amendment does not constitute undue prejudice. *See, e.g., D.H. Pace Co., Inc. v. OGD Equip. Co., LLC*, 515 F. Supp. 3d 1316 (N.D. Ga. 2021); *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. 2016); *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9-10 (D.D.C. 2013). The Court therefore finds that granting leave to amend will not cause any undue delay or prejudice.

The G6 Defendants also contend that the Motion for Leave to Amend was filed in bad faith because it is attempting get around the strictures of Rule 12(b)(6) and avoid the higher standards required by Rules 59 and 60. (G6 Defs.' Br. in Opp'n to Mot. for Leave to Amend, at 11-12). Again, this contention is based on the idea that it was procedurally improper for K.B. not to file her Motion for Leave to Amend prior to the Order on the Motions to Dismiss. Because there was no final judgment under Rule 54(b), K.B. could not have sought relief under Rules 59 or 60. Moreover, K.B. does not get around Rule 12(b)(6) by getting leave to amend. The G6 Defendants can still move to dismiss any amended complaint, and if the amended complaint does not plausibly state any claims against the G6 Defendants, then those claims will be dismissed again. Lastly, there is no bad faith arising from K.B.'s use of the Court's Order as a "template" for amending her Complaint. (G6 Defs.' Br. in Opp'n to Mot. for Leave to Amend, at 11). In fact, if K.B. did not address the deficiencies described in the Court's previous Order, the Motion for Leave to Amend would be denied as futile. Thus, the Court does not find that K.B. has acted in bad faith.

Finally, the G6 Defendants assert that granting leave to amend would be futile because K.B.'s claims are barred by res judicata since the Court granted their Motion to Dismiss. (*Id.* at 12-13). This is yet another iteration of the above argument that the Court's previous Order permanently ended this

case as to the G6 Defendants, and it likewise fails. Res judicata requires a final judgment on the merits. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). However, as explained above, there was no final judgment in this case, so res judicata does not apply. *See, e.g.*, *Shepard v. S & Davis Int'l, Inc.*, 2009 U.S. Dist. LEXIS 147398, at *41-47 (N.D. Ala. June 5, 2009); *Heath v. Wal-Mart Stores, Inc.*, 181 F. Supp. 2d 984, 987-88 (S.D. Ind. 2002). Because the G6 Defendants' arguments are unavailing and because this is K.B.'s first request for leave to amend her Complaint, the Court finds that justice requires granting K.B.'s Motion for Leave to File the First Amended Complaint.

## IV.   Conclusion

For the above reasons, the Plaintiff's Motion to Proceed Under Pseudonym and for Protective Order [Doc. 40] is GRANTED subject to the amendments noted above and the Plaintiff's Motion for Leave to Amend [Doc. 44] is GRANTED. The Clerk is DIRECTED to docket Plaintiff K.B.'s proposed First Amended Complaint [Doc. 44-1] as the operative Complaint in this matter, and to re-add the G6 Defendants: G6 Hospitality, LLC; G6 Hospitality Franchising, LLC; G6 Hospitality IP, LLC; G6 Hospitality Property, LLC; G6 Hospitality Purchasing, LLC; and Motel 6 Operating, L.P. as active defendants to this action.

SO ORDERED, this ___25th___ day of March, 2024.

THOMAS W. THRASH, JR.
United States District Judge