IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JANE DOE (K.B.), <br><br> Plaintiff, <br><br> v. <br><br> G6 HOSPITALITY, LLC, et al., <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 1:23-CV-2597-TWT |

**OPINION AND ORDER**

This is a human trafficking case. It is before the Court on the G6 Defendants'[1] Motion to Dismiss [Doc. 54] and Hare Krishna Savannah Hotel, LLC ("Hare Krishna")'s Motion to Dismiss [Doc. 55]. As explained below, the G6 Defendants' Motion to Dismiss [Doc. 54] is GRANTED and Hare Krishna's Motion to Dismiss [Doc. 55] is DENIED.

## I. Background[2]

This case involves allegations that Plaintiff K.B. was a victim of sex trafficking at a Motel 6 in Savannah, Georgia. K.B. states that an individual named John King forced her to have sex for profit by physically assaulting her, isolating her from loved ones, and restricting access to money and to her

---

[1] The G6 Defendants include G6 Hospitality, LLC; G6 Hospitality Franchising, LLC; G6 Hospitality IP, LLC; G6 Hospitality Property, LLC; G6 Hospitality Purchasing, LLC; and Motel 6 Operating, LP.

[2] The Court accepts the facts as alleged in the First Amended Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

identification documents. (Am. Compl. ¶ 52). The trafficking occurred for approximately sixteen weeks between August 2016 and December 2016. (*Id.* ¶ 53). The Motel 6 Savannah "was notorious for prostitution and drug distribution and use." (*Id.* ¶ 55). Hare Krishna owned and operated the Motel 6 Savannah as a franchisee of the G6 Hospitality system. (*Id.* ¶ 58). The G6 Defendants allegedly "participated directly in the operation and management of the Motel 6 Savannah." (*Id.* ¶ 59). Consequently, K.B. originally asserted a civil beneficiary claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA") and a state law claim against both Hare Krishna and the G6 Defendants. (Compl. ¶¶ 114-131). In a previous Order, the Court dismissed the civil beneficiary claim against the G6 Defendants and the state law claim against all Defendants. *See Doe (K.B.) v. G6 Hosp., LLC*, 2023 WL 8650785 (N.D. Ga. Dec. 14, 2023). The Court later granted K.B. leave to amend her Complaint. *Doe (K.B.) v. G6 Hosp., LLC*, 346 F.R.D. 150, 158-161 (N.D. Ga. 2024). K.B. has filed her Amended Complaint, and the G6 Defendants and Hare Krishna each move to dismiss.

## II.   Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is

"improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

Both Hare Krishna and the G6 Defendants argue that K.B. has failed to state a civil beneficiary claim under the TVPRA. "[T]o state a beneficiary claim under Section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had

3

constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). The Court will quickly address Hare Krishna's Motion to Dismiss and then turn its focus to the G6 Defendants' arguments for dismissal.

### A. Franchisee Liability

Hare Krishna largely seeks to relitigate what the Court already decided in Hare Krishna's previous Motion to Dismiss. The only difference here is Hare Krishna's citation to *K.H. v. Riti, Inc. (K.H. II)*, 2024 WL 505063 (11th Cir. Feb. 9, 2024), an unpublished Eleventh Circuit case that was decided after the Court denied Hare Krishna's Motion to Dismiss. Hare Krishna contends that in *K.H.*, "the 11th Circuit made clear that its decision in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), applies equally to claims against franchisees as well as those made against franchisors." (Hare Krishna's Br. in Supp. of Mot. to Dismiss, at 5). That changes nothing here. The Court already applied *Red Roof* when analyzing Hare Krishna's liability the first time around. *See Doe (K.B.)*, 2023 WL 8650785, at *9. Having reviewed the *K.H. II* opinion as well as the district court's opinion in the same case, *K.H. v. Riti, Inc (K.H. I).*, 2023 WL 3644224 (N.D. Ga. Apr. 17, 2023), the Court sees nothing that persuades it to reconsider its previous ruling.[3] Hare Krishna's Motion to

---

[3] That case is factually distinguishable from this one in at least two respects. First, as Hare Krishna acknowledges, the plaintiff there did not allege that the franchisee gave the plaintiff's trafficker(s) rooms out of street

4

Dismiss will be denied.

### B. Franchisor Liability

The G6 Defendants contend that K.B.'s claim against them should be dismissed because she has not plausibly alleged (1) that the G6 Defendants participated in a venture that violated the TVPRA, (2) that the G6 Defendants knew or should have known that the venture violated the TVPRA, or (3) that the G6 Defendants are vicariously liable for Hare Krishna's actions. The Court finds that K.B. has not adequately alleged either a direct or a vicarious claim under the TVPRA.

#### i.   Direct Liability

As to direct liability, the Court holds that K.B. has not adequately alleged knowledge. K.B. argues that plaintiff-specific knowledge should be required only if the alleged venture involved only the plaintiff(s). (Pl.'s Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 18-19). The Court appreciates that there is good reason for that reading of the statute.[4] However, in *Red Roof*, 21 F.4th at 726,

---

view or did any other actions that helped conceal the trafficking. (Hare Krishna's Br. in Supp. of Mot. to Dismiss, at 7 n. 2). Second, "there [we]re few if any allegations to support the contention that Riti or its employees knew or should have known that Laye was sex trafficking K.H. at the Jonesboro American Inn & Suites or how they participated in the transaction between K.H. and Lave." *K.H. I*, 2023 WL 3644224, at *4. Here, K.B. plausibly alleged that Hare Krishna had actual or constructive knowledge of K.B.'s trafficking. *Doe (K.B.)*, 2023 WL 8650785, at *8-9.

[4] In *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 557 (7th Cir. 2023), the Seventh Circuit highlighted how a requirement of plaintiff-specific knowledge in all cases would greatly weaken Section 1595 in cases of widespread

5

the Eleventh Circuit did not differentiate its analysis based on how the venture was defined. Rather, the court held that "to state a beneficiary claim under Section 1595(a), a plaintiff must plausibly allege that . . . (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff.*" *Id.* (emphasis added). The Court sees no other way to interpret this statement than as requiring plaintiff-specific knowledge as an element of any direct civil beneficiary claim. That holding is binding on this Court.

K.B. contends that she has plausibly alleged the G6 Defendants' constructive knowledge of the plaintiff's trafficking. Several of K.B.'s allegations are too general to allege the knowledge element, as the Court has already found. *Compare* (Am. Compl. ¶¶ 102) *with Doe (K.B.)*, 2023 WL 8650785, at *6 ("K.B.'s allegations that the G6 Defendants were aware of online reviews discussing trafficking and/or prostitution at the Savannah Motel 6, that regular inspections were done by the G6 Defendants, and that illegal activity was done in plain view do not plausibly allege the knowledge

---

trafficking ventures. By way of example, "consider a prostitution ring that hires a construction company to build a better brothel, one that attracts more customers and is better insulated from the prying eyes of law enforcement. The contractor knows that the business is generally engaged in sex trafficking, but so long as the contractor does not know of any individual victim, it would be insulated from civil liability. In other words, the larger the sex-trafficking venture, the less likely a victim would be able to prove sufficient knowledge." *Id.*

6

requirement.").

K.B. asserts additional allegations that she contends are sufficient to plausibly allege knowledge. She points to the fact that the Amended Complaint alleges that the G6 Defendants received real-time guest and property data from the Motel 6 Savannah. (Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 20; Am. Compl. ¶ 106). Even taking this as true and inferring that such data included K.B.'s data individually (as opposed to metadata), this is insufficient. At most, this data would provide constructive knowledge that commercial sex activity was occurring, but it would not show actual or constructive knowledge that "means of force, threats of force, fraud, coercion" or any combination thereof were used to cause K.B. to engage in any commercial sex acts. 18 U.S.C. § 1591(a); *see also A.B. v. Shilo Inn, Salem, LLC*, 2023 WL 5237714, at *6 (D. Or. Aug. 15, 2023) ("Plaintiff has failed to allege that any hotel employees witnessed the above-described indicators of Plaintiff's trafficking or were otherwise on notice of commercial sex activity by 'force, threats of force, fraud, [or] coercion,' as opposed to commercial sex activity generally." (citation omitted)). K.B. attempts to close this gap by alleging that the G6 Defendants have a policy that requires franchisees to "report suspected criminal activity" to the G6 Defendants. (Am. Compl. ¶ 103). However, she never alleges that Hare Krishna ever reported anything to the G6 Defendants.

K.B. also argues that 18 U.S.C. § 1595(a) "supports charging a hotel-defendant with constructive notice of trafficking when the exercise of ordinary diligence by that defendant (such as proper training of hotel staff or implementation and enforcement of appropriate policies for responding to sex trafficking) would have detected the sex trafficking of the plaintiff at the defendant's hotel." (Br. in Opp'n to G6 Defs.' Mot. to Dismiss, at 21-22). This argument is precluded by case law in the Eleventh Circuit, which has repeatedly held that the TVPRA does not impose an affirmative duty to prevent sex trafficking. *Red Roof*, 21 F.4th at 727 ("[The Plaintiffs'] only allegations as to the franchisors' knowledge or participation in those sex trafficking ventures are that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels. But observing something is not the same as participating in it."); *A.D. v. Choice Hotels Int'l, Inc.*, 2023 WL 3004547, at *4 (M.D. Fla. Apr. 19, 2023) (granting motion to dismiss when "[t]he Complaint acknowledges that Defendants opposed sex traffickers, but fault Defendants for taking ineffective steps to curtail the traffickers."); *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022) (granting motion to dismiss when "the complaint's allegations show that any local business venture simply allowed the trafficking by 'fail[ing] to combat sex trafficking through ineffective policies, procedures, and training for the

8

purpose of maximizing their profit.'" (citation omitted)); *see also A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) ("[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking." (citations omitted)); *A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 8674205, at *5 (E.D. Va. July 22, 2020) ("[T]he Court declines to find that hotels participate in a sex trafficking venture through a general failure to adequately educate and train staff, adopt policies, and implement protocols and procedures that reduce or eliminate sex trafficking on their properties." (citation omitted)).[5] The Court therefore finds that K.B. cannot meet the knowledge requirement based on the failure to exercise ordinary diligence in preventing trafficking.

---

[5] The Court recognizes that many of these cases refer only to the "participation" element (rather than the knowledge element) of a civil beneficiary claim when they make the cited statements. The Court does not believe that this distinction makes a difference. K.B.'s theories of G6's participation are both essentially that the G6 Defendants continued to operate a hotel after knowing that trafficking was occurring there—the only difference between the two is whom the venture was with. If continuing to operate a hotel was enough for "participation" and if alleging that the exercise of ordinary diligence would have detected the trafficking were enough for "knowledge," then the mere fact that the plaintiffs in these cases alleged a lack of diligence would not have been enough to dismiss the claims since the defendants all indisputably continued to operate their respective hotels. Moreover, the Eleventh Circuit itself stated that the "allegations as to *the franchisors' knowledge* or participation in those sex trafficking ventures" were insufficient because "observing something is not the same as participating in it." *Red Roof*, 21 F.4th at 727. This leads the Court to conclude that a plaintiff cannot impose an affirmative duty to prevent trafficking for the knowledge element any more than it can in the participation element.

Since none of K.B.'s theories plausibly allege that the G6 Defendants had actual or constructive knowledge of K.B.'s trafficking, K.B.'s direct liability theory thus fails to state a claim.[6]

### ii.  Vicarious Liability

Finally, K.B. argues that the G6 Defendants can be held vicariously liable for Hare Krishna's actions under an agency theory. The Court already reviewed the law on this issue and found no agency relationship exists between Hare Krishna and the G6 Defendants. *See Doe (K.B.)*, 2023 WL 8650785, at \*7-8. K.B. has since added more detail to her allegations, but the allegations still are either conclusory or show involvement limited to uniformity and standardization of the brand. (*See* Am. Compl. ¶¶ 111-14, 125-31). Such allegations are insufficient. *See J.K. v. Ramada Worldwide, Inc.*, 2023 WL 5621913, at \*4-5 (N.D. Ga. Aug. 30, 2023) (rejecting vicarious liability theory when "none of the facts alleged appear to exceed that of a typical franchise agreement arrangement—for example, providing its trademark and brand signage, providing equipment and supplies, requiring payment of royalty fees and taxes, requiring the franchisee to join associations and attend conferences, setting hours and holidays, determining acceptance of credit cards and storage

---

[6] The Court addresses the agency theory below. Because the Court finds there is no agency between Hare Krishna and the G6 Defendants that can impose vicarious liability, the Court also finds that knowledge has not been alleged vicariously either.

of consumer data, requiring job training, providing training tools and materials, and retaining the right to inspect the facility at any time."); *K.M. v. CPA Hotels of Atlanta, LLC*, 2023 WL 5747490, at *2-3 (N.D.Ga. Aug. 30, 2023); *see also S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 155-56 (E.D.N.Y. 2020) (rejecting vicarious liability theory based on the allegations that "[t]he Wyndham Defendants: (1) hosted the Howard Johnson Inn's online bookings on their domain; (2) required Howard Johnson Inn to use their customer rewards program; (3) set employee wages; (4) made employment decisions; (5) advertised for employment; (6) shared in the profits; (7) provided standardized training methods for Howard Johnson Inn's employees[;] (8) specified how to build and maintain the facilities; (9) provided standardized rules of operation; (10) regularly inspected their Howard Johnson Inn facility; (11) fixed prices; and (12) deprived the Howard Johnson Inn of independence in business operation."). Based on these cases, the Court finds that K.B. has simply alleged a franchisor-franchisee relationship. Under either federal common law or Georgia law, that is insufficient to impose vicarious liability. *Doe (K.B.)*, 2023 WL 8650785, at *7 & n. 5. K.B. thus fails to state a TVPRA claim against the G6 Defendants.

## IV. Conclusion

For the foregoing reasons, the G6 Defendants' Motion to Dismiss [Doc. 54] is GRANTED and Hare Krishna's Motion to Dismiss [Doc. 55] is DENIED.

SO ORDERED, this   5th   day of November, 2024.

                                                                                         */s/ Thomas W. Thrash, Jr.*
                                                                                         THOMAS W. THRASH, JR.
                                                                                         United States District Judge